UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN MICHIGAN

TERI HJELTNESS,

    Plaintiff,

v.

ROWERDINK, INC.

    Defendant.

Case No:

Hon.

SCOTT P. BATEY (P54711)
Batey Law Firm, PLLC
Attorney for Plaintiff
30200 Telegraph Road, Suite 400
Bingham Farms, MI  48025
(248) 540-6800-telephone
(248) 540-6814-fax
sbatey@bateylaw.com

## COMPLAINT AND JURY DEMAND

NOW COMES, Plaintiff, TERI HJELTNESS, by and through her attorneys Scott P. Batey and the Batey Law Firm, PLLC, and for her Complaint against Defendant states as follows:

1.    Plaintiff, Teri Hjeltness is a resident of the City of Romulus, County of Wayne and State of Michigan.

2.    Defendant, Rowerdink, Inc. (hereinafter "Rowerdink") is a domestic profit corporation whose resident agent is John Rowerdink, and whose registered

office address is 211 Fuller N.E., Grand Rapids, Michigan 49505.

3. The events producing the original injury occurred in the County of Wayne, State of Michigan, and jurisdiction and venue are proper in the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) & (c).

4. Plaintiff brings this action for damages arising out of the acts and/or omissions of Defendant constituting unlawful discrimination/harassment consisting of sexual harassment and retaliation in violation of Title VII and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, *et seq*. ("ELCRA") which resulted in emotional and economic damages to Plaintiff.

## GENERAL ALLEGATIONS

5. Plaintiff incorporates by reference paragraphs 1 through 5 of the Complaint as though fully set forth herein.

6. Plaintiff is a 48 year old woman who began her employment with Rowerdink on or about September 3, 2019.

7. On or about December 27, 2019, Plaintiff was promoted to the position of Dispatch.

8. As Dispatch, Plaintiff was in charge of sending employees on runs.

9. As a result of the promotion, Plaintiff began to be sexually harassed by two of her coworkers, Drew Siagle ("Siagle") and Brian Dean ("Dean") who

felt they were more deserving of the promotion.

10. Immediately after Plaintiff obtained the promotion, Siagle began to make comments about how Plaintiff should be fired.

11. On or about January 28, 2020, Plaintiff felt unwell, determined that her blood sugar was low, and went to the breakroom to get food to raise her blood sugar levels.

12. Dean saw Plaintiff approaching and began to hold the breakroom door shut and told Plaintiff that she was not allowed to enter.

13. Even though Plaintiff told Dean that her blood sugar was low and she needed to get food, Dean continued to hold the door shut and told Plaintiff not to speak with him.

14. Plaintiff informed her supervisor Jim Beasely ("Beasely"), who simply told Dean to never repeat the incident again, and no further remedial action was taken.

15. On or about January 30, 2020, Dean and Siagle openly stated that the only reason Plaintiff was promoted was because she has "huge tits."

16. On or about February 11, 2020, after Plaintiff left work for the day, Dean began to tell other employees that Plaintiff was a "bitch" and that Plaintiff was too busy to complete her job duties.

17. On or about February 21, 2020, Plaintiff's supervisor, Beasely, was

out for surgical leave and was gone through at least February 26, 2020.

18. While Plaintiff's supervisor was out on leave, on February 21, 2020 Defendant's employee Skylar Davis overheard employees Theresa Brophy ("Brophy"), Siagle, and Dean conspiring to get rid of Plaintiff.

19. Later that same day, Brophy told Plaintiff to leave work at 2:30 p.m. as Siagle would be taking over her position for the remainder of the day.

20. On February 26, 2020, Dean began to physically jab into Plaintiff's back while both the offender and Siagle laughed and made vulgar comments to Plaintiff.

21. As this was unwanted physical contact, Plaintiff immediately told the two employees to stop harassing her.

22. Dean and Siagle continued to harass Plaintiff, by intentionally inerferring with her office space and yelling profanities at her.

23. Later on February 26th, Dean and Larry Katz ("Katz") were outside when Dean commented that the snow "makes his nipples hard" to which Katz said "I bet Teri has way bigger nipples."

24. Plaintiff reported the incident involving Katz and Dean directly to Bill Rowerdink, the owner of the company, who said he would inform Beasely and the situation would be handled.

25. Bill Rowerdink never informed Beasely about the harassment that

Plaintiff reported.

26. Despite reporting the sexual harassment to Plaintiff's direct supervisor, the owner of the company, and Defendant's Human Resources Department, Defendant took no remedial action to stop the harassment.

27. Plaintiff began to fear even leaving her desk due to the constant harassment.

28. On March 3, 2020 Plaintiff filed a formal complaint with the EEOC.

29. On or about March 4, 2020, Beasely came to Plaintiff's desk and asked her to accompany him to a conference room with Brophy and Bill Rowerdink.

30. Bill Rowerdink questioned Plaintiff as to why she filed a complaint with the EEOC and stated that if Plaintiff did not provide him with the information/notes she gave to the EEOC she would be terminated.

31. Due to the hostile nature of the meeting and the threat to terminate her, Plaintiff experienced a panic attack and was openly crying.

32. As Plaintiff clocked out that night, Bill Rowerdink approached her and said that he and Jim Beasely had done nothing wrong, and he just needed the information she provided to the EEOC.

33. Plaintiff responded that although Beasely had never directly harassed her, he did nothing to stop his employees from engaging in harassment.

34. The next day, March 5th, Plaintiff was again called into a conference room by Beasely, Rowerdink, and Brophy.

35. Beasely again reiterated that this situation had nothing to do with Bill Rowerdink, Brophy, or himself.

36. Bill Rowerdink again asked Plaintiff about her statement and notes submitted to the EEOC.

37. Plaintiff repeatedly declined to discuss her submitted complaint or notes and asked if she was free to leave the conference room.

38. Immediately after, Plaintiff witnessed both Dean and Siagle being called into the same conference room.

39. Later that same day, Beasely approached Plaintiff and informed her that he was working on getting her a raise and giving Plaintiff her missing PPO hours.

40. On March 11, 2020 Plaintiff was informed by Brophy that her hours were being cut and Dean would be partially taking over as Dispatch.

41. For the six months immediately prior to her hours being changed, Plaintiff had consistently worked 6:00a.m. to 4:30p.m, Monday through Friday.

42. On March 13, 2020, fellow employee Josh Bear ("Bear") openly stated that "we work with a bunch of pussies" then said, "oh shit, I gotta be careful with what I say around Teri or she'll try to get me fired."

43. On March 16, 2020, Bear called Plaintiff a "cocksucker" and a "fragile lil flower."

44. That same day, Plaintiff called the EEOC and informed them of Defendant's retaliation tactics and the continued harassment.

45. On March 17, 2020, two employees entered into a verbal altercation over which runs they were being assigned by Plaintiff.

46. Beasely informed the employees they were not to interrupt Plaintiff's job functions, yet as one passed by Plaintiff she told her to "fuck off."

47. On March 17, 2020, a fellow employee showed Plaintiff a Facebook post authored by another employee that stated, "I fucking can't stand this raggy old bitch."

48. The employee who authored the post did so in response to Plaintiff carrying out her job duties and assigning the employee a run to Southfield, even though the employee had wanted to leave early that day.

49. Only after Plaintiff filed the EEOC complaint did Defendant begin to take inadequate remedial action.

50. Although Defendant suspended Bear for three days without pay, it did not undertake any remedial action for the past harassment and took no action to ensure that the harassment would not continue in the future.

51. On March 26, 2020, Defendant informed Plaintiff that she could not

return to work until she was cleared of COVID-19 and subsequently emailed lay-off documents.

52. On April 14, 2020, Plaintiff emailed her direct manager her negative COVID-19 test result, but he stated that Plaintiff could not yet return to work.

53. In June of 2020, while still waiting to return to her position, Plaintiff learned that about 90% of Defendant's employees had been called back to work.

54. Instead of calling Plaintiff back to work, Defendant gave Plaintiff's position to a different employee.

55. On July 20, 2020, Plaintiff went to Defendant's offices to drop off scores for ordered parts.

56. While at the office, Plaintiff spoke with her direct manager who informed her that Defendant was not calling any more employees back to work.

57. Despite claiming that there was not enough work to justify calling back already-hired employees, Defendant hired five new employees.

58. Plaintiff has been constructively discharged in direct retaliation for her reports of sexual harassment.

59. Plaintiff enjoyed her job and, prior to Defendant's workplace becoming hostile, looked forward to coming to work each day.

60. Defendant's actions were intentional, or were carried out with reckless indifference to Plaintiff's rights.

61. On September 22, 2020 the EEOC issued a Right to Sue letter to Plaintiff.

## COUNT I
## SEXUAL HARASSMENT/DISCRIMINAITON IN VIOLATION OF TITLE VII AND ELCRA-HOSTILE WORK ENVIRONMENT

62. Plaintiff incorporates by reference paragraphs 1 through 61 of the Complaint as though fully set forth herein.

63. Pursuant to Title VII of Civil Rights Act of 1964 and the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq. ("ELCRA") Plaintiff is guaranteed the right to be free from discriminatory treatment and harassment from her employer and/or supervisors on the basis of her sex.

64. At all times relevant, Defendant created a hostile work environment for Plaintiff as a result of Plaintiff's sex, and due to her status as a female, Defendant's employees began to sexually harass Plaintiff.

65. Defendant took adverse employment actions against Plaintiff by failing to take remedial action after she reported the numerous incidents of sexual harassment and retaliated against her for the reports by decreasing her hours and terminating her from her position.

66. Defendant had the knowledge that Plaintiff was being sexually harassed as well as the ability to take remedial measures to stop the sexual harassment, but failed/refused to do so.

67. Defendant was Plaintiff's employer within Title VII and the ELCRA

68. Plaintiff has been subjected to repeated and continuous harassment and discriminatory treatment based upon her sex by Defendant, its employees and agents to the point where her status as an employee has been detrimentally affected.

69. Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

   a. Violating the laws against discrimination by engaging in sexual harassment in the workplace;

   b. Retaliating against employees who make complaints of discrimination and harassment; and

   c. Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

70. Defendant owed Plaintiff as a female employee, a duty to adequately advise their employees to refrain from discriminating against employees.

71. Defendant breached and violated its duty owed to Plaintiff, by reason of the following acts and/or omissions:

   a. Failing to prevent or stop sexual harassment against Plaintiff causing a hostile work environment;

   b. Taking adverse employment action against Plaintiff due to her sex; and

   c. Retaliating against Plaintiff for her complaints of sexual harassment.

72. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct on the part of the Defendant.

73. Plaintiff is entitled to punitive, exemplary, and compensatory damages pursuant to Title VII and the ELCRA as a result of each and every violation of the act, including costs and reasonable attorney's fees.

74. Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and against Defendants in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

## COUNT II
## RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOT-LARSON CIVIL RIGHTS ACT

75. Plaintiff incorporates by reference paragraphs 1 through 74 of the Complaint as though fully set forth herein.

76. Pursuant to Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq., Plaintiff is guaranteed the right to be free from discriminatory

treatment and harassment from her employer and/or supervisors on the basis of her sex.

77. Defendant created a hostile work environment for Plaintiff as a result of Plaintiff's status as a female employee.

78. Defendant took adverse employment actions against Plaintiff by allowing employees to harass Plaintiff because they felt they should have received her promotion and by creating a sexually hostile work environment that was hostile, pervasive, and offensive such that no reasonable person would continue to work under those conditions causing Plaintiff's constructive discharge.

79. Defendant took additional adverse employment action against Plaintiff by wrongfully terminating her in retaliation for her reports of sexual harassment.

80. Defendant had the knowledge that Plaintiff was being sexually harassed against, as well as the ability to take remedial measures to stop the harassment, but failed/refused to do so.

81. Defendant was Plaintiff's employer within the Michigan Elliott-Larsen Civil Rights Act, MCLA §37.2101, et seq.

82. Plaintiff has been subjected to repeated and continuous harassment and discriminatory treatment based upon her sex by Defendant, its employees, and agents to the point where her status as an employee has been detrimentally affected

and would have dissuaded a reasonable worker from making or supporting a claim.

83. Defendant and its agents, employees and representatives, breached and violated their duty to Plaintiff by reason of the following acts and/or omissions:

    a. Violating the laws against discrimination by engaging in sexual harassment in the workplace;

    b. Retaliating against employees who make complaints of discrimination and harassment; and

    c. Failing to take serious and corrective action when informed by Plaintiff that the conduct towards her was unlawful.

84. Defendant owed Plaintiff as a female employee, a duty to adequately advise their employees to refrain from discriminating against employees.

85. Defendant owed Plaintiff a duty to not retaliate against her for making complaints of sexual harassment.

86. As a direct and proximate result of the actions of Defendant, Plaintiff was the subject of discriminatory conduct and retaliation.

87. Because of the unlawful conduct of Defendant and its agents and employees, and as a direct and proximate cause of such conduct, Plaintiff has suffered damages, including humiliation, embarrassment, outrage, mental anguish and anxiety, emotional distress, loss of self-esteem, loss of earnings and other employment benefits, and a loss of capacity for the enjoyment of life.

WHEREFORE, Plaintiff respectfully requests judgment in her favor and

against Defendant in an amount in excess of $75,000.00, together with costs, interest and attorney fees and any other relief this Honorable Court deems appropriate.

                        Respectfully submitted,

                        **BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
     SCOTT P. BATEY (P54711)
     Attorney for Plaintiff
     30200 Telegraph Road, Suite 400
     Bingham Farms, MI  48025
     (248) 540-6800
     sbatey@bateylaw.com

Dated:  October 28, 2020

## **DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Teri Hjeltness, by and through her attorneys, Scott P. Batey and the Batey Law Firm, PLLC, and hereby demands a trial by jury on all issued allowed by law.

    Respectfully submitted,
    **BATEY LAW FIRM, P.L.L.C.**

BY: /s/Scott P. Batey
    SCOTT P. BATEY (P54711)
    Attorney for Plaintiff
    30200 Telegraph Road, Suite 400
    Bingham Farms, MI  48025
    (248) 540-6800
    sbatey@bateylaw.com

Dated:  October 28, 2020